290 So.2d 123 (1974)
Sandra Jean CALLEJA, Appellant,
v.
Kent WILEY, Appellee.
No. 72-863.
District Court of Appeal of Florida, Second District.
February 15, 1974.
Nelson, Stinnett, Surfus, Payne, Hesse & Cyril, Sarasota, for appellant.
David S. Yost of Williams, Parker, Harrison, Dietz & Getzen, Sarasota, for appellee.
*124 MANN, Chief Judge.
Tony (formerly Toni) is a cat, and the focal point of this dogfight between three utterly human beings. To explain why a cat's tale is pending in the Court of Appeal, we must begin at the beginning.
Mrs. Calleja brought Tony to Dr. Wiley to be spayed. As she put it, "We wanted to make sure we didn't have any baby kittens around the house." Dr. Wiley undertook the operation, but after making the supposedly necessary surgical incision found no female organs. Assuming that, without inquiring whether, the Callejas' concern about the feline population explosion extended to the neighbors' houses, he castrated Tony. The operation cost $15, which was paid.
A few days later, Tony developed a urinary blockage. Dr. Wiley performed more surgery, and charged $20, which Mrs. Calleja wasn't happy about, but it would have cost $4 more to leave Tony overnight and let her husband handle it, so she gave a check for $20 on the account of Calleja Construction. When he learned what had happened, Mr. Calleja thought he had been shabbily dealt with, and stopped payment. He wrote letters to Dr. Wiley and to the South West Florida Veterinary Medical Association. The Association did not attribute the urinary obstruction to the surgery, and dismissed the mistake as to the cat's gender as something "most all practitioners have done." Dr. Wiley's attribution of the dispute to a failure of communication in a letter suggesting further discussion was followed by a statement that "The check will be processed in accordance with Florida law after a reasonable wait for your reply, approximately one week."
Dr. Wiley went to the Court House and signed an affidavit charging Sandra Calleja with uttering a worthless check "with intent to injure and defraud." Her complaint for malicious prosecution which followed the dismissal of the charge alleges that she was "arrested, imprisoned, booked, mugged (sic) and fingerprinted."
The trial judge granted Dr. Wiley a summary judgment, and Mrs. Calleja appeals. We reverse.
The summary judgment recites that the judge has taken notice of Fla. Stat. §§ 713.58 and 832.041, F.S.A. (1971). Section 713.58(3) reads:
"In that the possessory right and lien of the person performing labor or services under this section is released, relinquished, and lost by the removal of such property upon which a lien has accrued, it shall be deemed prima facie evidence of intent to defraud if, upon the removal of such property, the person removing such property utters, delivers, or gives any check, draft, or written order for the payment of money in payment of the indebtedness secured by the lien and then stops payment on such check, draft, or written order."
The summary judgment finds that "based upon undisputed facts, the defendant is entitled to a judgment as a matter of law for the reason that it is the opinion of this Court that the action of the Defendant in instituting criminal proceedings against the Plaintiff was based on probable cause."
There are two simple answers to this theory. The first is that Sandra Calleja did not stop payment on the check. The second is that Dr. Wiley did not charge a criminal offense under Section 713.58, but rather under the general worthless check law, § 832.041. It does not matter that he may have relied on the justice of the peace or someone in that office, either. Priest v. Groover, Fla.App.2d 1974, 289 So.2d 767.
Apparently for the first time on this appeal, Dr. Wiley asserts that Mrs. Calleja has not pleaded termination of the proceedings in her favor. This issue was *125 not mentioned by the trial court. The allegation might be improved somewhat, but we think it sufficient to last until this case gets back to Sarasota. The malicious prosecution complaint alleges that "the County Prosecutor ... refused information on the said charge or charges and completely abandoned prosecution thereof." Of the three cases cited by appellee to prove what is conceded on both sides, namely that the termination of the prosecution in favor of the present plaintiff is an element of a malicious prosecution action, two contain general dicta and one, Freedman v. Crabro Motors, Inc., Fla.App.3d 1967, 199 So.2d 745, was a case in which the prosecution was dismissed when the complaining witness did not appear. There the dismissal was not bona fide "in that it was bargained for and obtained by the accused on his promise of payment or `restitution'." 199 So.2d at 746. That is markedly different from the case before us. See Liabos v. Harman, Fla.App.2d 1968, 215 So.2d 487, and cases therein cited.
The appellee next argues that the presence of probable cause is adjudicated when a justice of the peace holds that the accused should answer the charges against him. This begs the question. We find nothing in this record to suggest that a magistrate has found, after receiving evidence, that there is probable cause to believe Mrs. Calleja guilty of the crime charged. If, at preliminary hearing, such a determination had been made, it would, under Florida law, raise a presumption of probable cause. Gallucci v. Milavic, Fla. 1958, 100 So.2d 375. Appellee reasons that the involvement of the prosecutor makes it clear that the justice of the peace has determined the matter. If this were so, the proof would be close at hand.
We would agree that the allegation of favorable termination might be made more specific, but there is no specific requirement that it be terminated in a particular way. See 52 Am.Jur.2d Malicious Prosecution § 34. The action for malicious prosecution does not depend on some specific event, because termination may be evidenced in a variety of ways. It becomes now a matter of proof.
Reversed and remanded.
HOBSON and BOARDMAN, JJ., concur.