335 So.2d 560 (1976)
FOOD FAIR STORES, INC., d/b/a Pantry Pride Stores, Inc., Appellant,
v.
Marjorie M. KINCAID, Appellee.
Marjorie M. KINCAID, Appellee,
v.
FOOD FAIR STORES, INC., d/b/a Pantry Pride Stores, Inc., Appellee.
Nos. 75-340 and 74-1256.
District Court of Appeal of Florida, Second District.
September 17, 1976.
Rehearing Denied October 13, 1976.
*561 Edna L. Caruso, Howell, Kirby, Montgomery, D'Aiuto & Dean, West Palm Beach, for appellant Food Fair Stores.
Richard A. Gilbert, Fowler, White, Gillen, Boggs, Villareal & Banker, and Michael L. Kinney, Tampa, for appellee/cross-appellant Kincaid.
PER CURIAM.
Appellant, Food Fair Stores, Inc., appealed a $17,500 judgment in favor of Mrs. Kincaid entered in a false arrest and malicious prosecution suit. Mrs. Kincaid filed a separate notice of appeal contending that the trial court erred in not submitting the question of punitive damages to the jury. These two appeals have been consolidated.
The facts surrounding the incident were conflicting in some respects. Mrs. Kincaid testified that a little before noon on October 14, 1971, she went to a Pantry Pride Food Store on Gandy Boulevard in Tampa, Florida, to buy some groceries. She had shopped at the store many times in the past. While shopping she selected three packets of flower seeds and placed them in her cart. Because of their size, the packets of flower seeds slid out onto the floor and she placed the flower seed packets in her breast pocket. She claimed that the seed packages were colorful and that they were visibly protruding above her breast pocket. After having selected all of her groceries she went to the check-out counter and paid $15.67 for the groceries in her basket. She claimed that she was never sure whether or not she paid for the seeds and that if she did not pay for them, this was merely accidental.
Mrs. Kincaid was stopped at the door by an unidentified woman and asked to step into the manager's office. Once inside the office, she said she asked the employees for their names and they refused to give them. Finally, the woman grabbed the seeds out of her pocket and told her that she had not paid for them. Mrs. Kincaid then testified that a "big, black-headed man" yelled at her and told her to sign a joint confession and release. She told the man that she was feeling ill. He shoved a wastepaper basket up to her and told her that he would have to call a police ambulance. Although Mrs. Kincaid was arrested, she testified that she was never informed of her rights. She said *562 that the store employees at first refused to allow her to contact her husband, hoping to force her to sign the confession. It was about a half an hour until the police arrived and another ten or fifteen minutes until she was taken away for an unpleasant trip to the police station in the back of the police car.
The plaintiff's husband testified that when he arrived at the store his wife looked ill and upset. Subsequently, Mrs. Kincaid suffered from severe depression and other psychiatric problems which required the treatment of a psychiatrist.
The woman who stopped Mrs. Kincaid was a security officer for the store. She testified that she had been watching Mrs. Kincaid for some time. She said that Mrs. Kincaid "stopped and looked around" before she put the seeds in her pocket. The store employees said the packet of seeds did not appear above the level of her shirt pocket. Reference to the cash register tape reflects that Mrs. Kincaid had not, in fact, paid for the seeds.
Fla. Stat. § 811.022 (1971), now Fla. Stat. § 901.34 (1975) provides:
"811.022 Shoplifting; penalties; prima facie evidence of concealment; detention and arrest; exemption from false arrest. 
(1) A peace officer, or a merchant, or a merchant's employee who has probable cause for believing that goods held for sale by the merchant have been unlawfully taken by a person and that he can recover them by taking the person into custody, may, for the purpose of attempting to effect such recovery, take the person into custody and detain him in a reasonable manner for a reasonable length of time. Such taking into custody and detention by a peace officer, merchant, or merchant's employee shall not render such police officer, merchant, or merchant's employee criminally or civilly liable for false arrest, false imprisonment, or unlawful detention.
* * * * * *
(3) A merchant or a merchant's employee who causes such arrest as provided for in subsection (1) hereof of a person for larceny of goods held for sale shall not be criminally or civilly liable for false arrest or false imprisonment where the merchant or merchant's employee has probable cause for believing that the person arrested committed larceny of goods held for sale."
Even when the evidence is viewed most favorably to Mrs. Kincaid, the action of the store employees did not exceed the scope of the protection afforded by the statute. The fact that Mrs. Kincaid was not ultimately found to be guilty does not dictate a contrary conclusion. Rothstein v. Jackson's of Coral Gables, Inc., Fla.App. 1961, 133 So.2d 331. Under the circumstances the employees of Food Fair had probable cause to believe a larceny had been committed and had a right to take her into custody. They were entitled to detain her in a reasonable manner for a reasonable length of time. Mrs. Kincaid was not embarrassed by being accused in public but was politely asked to accompany the store's woman security agent to a private office. There was no suggestion of physical mistreatment. The police were called within about five minutes after Mrs. Kincaid was detained, and the store cannot be penalized for peaceably holding her for the period of time necessary for the police to arrive. The mental anguish suffered by Mrs. Kincaid is something which necessarily follows from a detention of this sort. Therefore, the court should have directed a verdict on the count for false arrest.
On the other hand, the statute does not offer protection against malicious prosecution, so the law otherwise applicable to this cause of action applies. Of the several elements necessary to prove malicious *563 prosecution, the store only disputed the claim of lack of probable cause. As contrasted to the count on false arrest, there were additional facts bearing on the question of whether Food Fair should have caused Mrs. Kincaid to be prosecuted. She gave a plausible explanation for having placed the seeds in her shirt pocket, and according to her the packets were clearly visible. When accosted by the store's security agent, she indicated some confusion over whether she had paid for the seeds but immediately stated that if she had not, she had certainly intended to do so. The cost of the seeds was a small fraction of her bill, and she had ample money to pay for them. There was no investigation of Mrs. Kincaid's reputation. As we stated in Liabos v. Harman, Fla.App.2d 1968, 215 So.2d 487, 488:
"... [I]n order for probable cause to exist the countenance of the situation must be such that a prudent man would set in motion the forces of a criminal proceeding. And where it would appear to a `cautious man' that further investigation is justified before instituting that proceeding, then liability may attach for the failure to do so."
Thus, on the issue of malicious prosecution, there were enough facts in dispute which if resolved favorably to Mrs. Kincaid would support a determination of lack of probable cause. Cf. Oosterhoudt v. Montgomery Ward & Company, Inc., Fla.App.1st, 1975, 316 So.2d 582.
This necessarily leads us to a discussion of whether the determination of probable cause is a function of the jury or the court. The general law on this subject is set forth in § 673 of the Restatement of Torts dealing with wrongful prosecution which reads as follows:
"§ 673. Function of Court and Jury.

(1) In an action brought under the rules stated in § 653, the court determines whether
* * * * * *
(c) the defendant had probable cause for initiating the proceedings;
* * * * * *
(2) In an action brought under the rules stated in § 653, subject to the control of the court, the jury determines
(a) under what circumstances the proceedings were initiated in so far as may be necessary to enable the court to determine whether the defendant had probable cause for initiating them; * * *"
Comment d. under Subsection (1)(c) states:
"d. The respective functions of court and jury in actions brought under the rule stated in § 653 differ in one important particular from their respective functions in other actions of tort in which, as in actions for negligence, the liability of the defendant depends upon the unreasonable character of his conduct. In passing upon this question someone must determine what the defendant did or failed to do and the circumstances under which his act or omission occurred; and someone, either court or jury, must determine whether, in the light of these circumstances, his conduct measured up to the standard of a reasonable man. In actions for negligence and other tort actions in which the liability of a defendant depends upon the unreasonable character of his conduct, both of these matters are determined by the jury subject to the limitations stated in Volume II, § 285, Comments b, c, and d.
"In actions brought under the rules stated in § 653, however, upon the issues of favorable termination and probable cause, the jury has only the function of finding the circumstances under which the defendant acted. The court determines whether, under those circumstances, the termination was sufficiently favorable to the accused, and whether the defendant had or had not probable cause. Where there is no conflict in the testimony *564 as to what the circumstances were, the court has no need for a finding of the jury. The jury is not called upon to act unless there is a conflict in the testimony which presents an issue of fact for its determination.
"The respective functions of the court and jury in determining the issue of probable cause can be exercised by them in one of two ways. The better but less usual method is to require the jury to find a special verdict setting forth the circumstances under which they find that the proceedings were initiated. Upon these findings the court then determines whether the defendant had probable cause. The usual method is for the court to charge the jury under what combination or combinations of circumstances, which may be found under the evidence, the defendant did or did not have probable cause for initiating the proceedings."
A comprehensive annotation at 87 A.L.R. 183 entitled "Probable cause or want thereof, in malicious prosecution action, as question of law for court or of fact for jury" confirms this view. In his summary at page 186, the annotator states in part:
"The rule that the question of probable cause in an action for malicious prosecution is for the court, and not for the jury, although undoubtedly anomalous in that it substitutes the judgment of the court for that of the jury as to the reasonableness of the defendant's conduct in the light of the admitted or established facts and beliefs, is nevertheless, except in a few jurisdictions, established, in theory at least, by the overwhelming weight of authority. The rule in its origin is probably traceable to the apprehension of the courts that if the question of probable cause were left to juries, they might not sufficiently safeguard the rights of defendants, and thus might discourage the performance of a public duty of bringing complaints against persons they believe to have committed offenses.
The annotation lists Florida among those jurisdictions supporting the majority view, and our study of Florida cases supports this conclusion. In Stone v. Hamic, Fla.App.2d 1966, 189 So.2d 908, this court stated:
"... When the facts relied upon to show probable cause are in dispute, their existence is a question of fact for the jury to resolve; the legal effect of such facts, when found or admitted to be true, is a question of law for the court to decide... ."
See also Glass v. Parrish, Fla. 1951, 51 So.2d 717; Lewton v. Hower, 1895, 35 Fla. 58, 16 So. 616; Cold v. Clark, Fla. 1965, 180 So.2d 347; contra Oosterhoudt v. Montgomery Ward & Company, Inc., supra.
Thus, it appears that where, as in the instant case, one version of the facts would support the court's determination of probable cause and another version would support the court's determination of lack of probable cause, the issues of fact are to be presented to the jury, preferably by way of special verdict, but in any event, under proper instructions as to what does and what does not legally constitute probable cause. The instructions in this case fell somewhat short of this criteria in that they appeared to submit the entire issue of probable cause to the jury. However, these instructions were essentially a composite of those requested by both parties, and the record does not reflect that appellant sought, by way of special verdict or more specific instructions, to have the question of probable cause determined by the court once the issues of fact were resolved. Hence, we cannot say that judicial error was committed when the whole question was submitted to the jury. The jury obviously resolved the issue in favor of Mrs. Kincaid and there are facts in the record which would dictate a determination of the lack of probable cause. Therefore, the judgment in her favor on the count of malicious prosecution must be sustained.
*565 Nevertheless, because we have held that count one cannot stand, we must comment on the matter of damages. At the trial, the store's attorney requested special verdicts whereby the jury would have been required to pass on each count. The court declined the request and submitted a general verdict which was returned favorably to Mrs. Kincaid. While some of the damages applicable to each count necessarily overlapped, some of the damages which pertained to false arrest were not recoverable under the claim for malicious prosecution. Cf. S.H. Kress v. Powell, 1938, 132 Fla. 471, 180 So. 757. We cannot tell, however, how much of the total award the jury determined to be attributable to the circumstances within the factual configuration of count one. Accordingly, while liability under count two must be sustained, a new trial should be awarded on the issue of damages recoverable under that count.
We have also considered Mrs. Kincaid's appeal as to submitting the issue of punitive damages to the jury and under the facts we hold that the trial court was eminently correct in withdrawing this issue from the jury.
The cause is remanded for further proceedings not inconsistent herewith.
McNULTY, C.J., and GRIMES, J., concur.
HOBSON, J., concurs in part and dissents in part with opinion.
HOBSON, Judge (dissenting in part).
I respectfully dissent from the majority in their holding that the evidence viewed most favorably to Mrs. Kincaid as a matter of law did not exceed the protection afforded by Fla. Stat. § 811.022 (1971), now Fla. Stat. § 901.34 (1975). It is my view that there is sufficient evidence for the jury to find, as it did, that Mrs. Kincaid was not detained and treated by the employees of Food Fair in a reasonable manner. Therefore, I would affirm the final judgment entered on the jury verdict in favor of Mrs. Kincaid.
In all other respects I concur with the majority opinion.