387 So.2d 377 (1980)
Anthony GATTO, Appellant,
v.
PUBLIX SUPERMARKET, INC. and Harold Stepp, Appellees.
No. 79-1270.
District Court of Appeal of Florida, Third District.
June 17, 1980.
Rehearing Denied July 25, 1980.
*379 High, Stack, Lazenby, Bender, Palahach & Lacasa and Alan R. Dakan, Miami, William J. Williams, Coral Gables, for appellant.
Marlow, Shofi, Ortmayer, Smith, Connell & Valerius and Joseph H. Lowe, Miami, for appellees.
Before HUBBART, NESBITT and DANIEL PEARSON, JJ.
DANIEL PEARSON, Judge.
The genesis of this case was an incident in which Publix employees, believing that Gatto had shoplifted some paperback books, (1) attempted to retrieve the books, (2) called the police who arrested Gatto, and (3) executed a sworn complaint leading to an abortive criminal prosecution of Gatto. Gatto thereafter sought damages in a suit against Publix Supermarket, Inc. and its store manager, Harold Stepp, charging assault and battery, false arrest and imprisonment, and malicious prosecution.
The trial court directed verdicts in favor of the defendants on all counts, and from those rulings, Gatto appealed. We affirm the trial court's rulings in respect to assault and battery and false arrest and imprisonment[1]; we reverse the directed verdict on the malicious prosecution count.
The evidence adduced by Gatto, viewed in a light most favorable to him, Wheaton v. Bohnert Roofing and Supply Co., 369 So.2d 1016 (Fla. 3d DCA 1979), establishes no more than a casual touching of Gatto's hand by Stepp during Stepp's efforts to retrieve what he reasonably believed to be Publix's property.[2] There is no evidence to show that Gatto was placed in fear of imminent peril, that the contact was harmful or offensive to him, or that his personal dignity was offended by the touching. See McDonald v. Ford, 223 So.2d 553 (Fla. 2d DCA 1969) (in which the defendant's initial "laughing embrace" of the plaintiff, as distinguished from his later efforts to overcome her resistance, was said not to constitute an assault and battery); Restatement (Second) of Torts §§ 19, 21 (1966).
Similarly, by Gatto's own admission, at all times he considered himself free to leave the premises of Publix and was never restrained from leaving. While Stepp eventually called the police, he did so at Gatto's insistence.[3] The evidence, again *380 viewed most favorably to Gatto, does not support a verdict for Gatto on the false arrest or imprisonment counts.
We now turn to the malicious prosecution count. The defendants' motion for the entry of the directed verdict was essentially grounded on their contention that Gatto failed to show that there was a bona fide termination of the criminal prosecution against him, and therefore failed to prove an essential element of his malicious prosecution action. It was upon this ground that the trial court ruled in the defendants' favor, and it is upon this ground that Publix and Stepp argue for affirmance on appeal. Of course, if Gatto failed to prove this or any essential element of his malicious prosecution action, it would be fatal to his action. Bieley v. duPont, Glore, Forgan, Inc., 316 So.2d 66 (Fla. 3d DCA 1975).
The evidence in the present case reveals that the sworn complaint (an arrest or "A" form) executed on January 20, 1978, by the arresting officer and countersigned by Harold Stepp was determined by the State Attorney's Office to be technically defective. The defects were duly noted on a penal screening form. The first defect was that the complaint charged Gatto with "retail theft in viol[ation] of F.S. 812.021" when the statute cited should have been F.S. 812.015. The second defect was that the complaint had no entry referring to any section of the Code of the City of Coral Gables which would enable a city police officer to arrest for violation of a state statute. The penal screening form contains, inter alia, two other lines which are pertinent to this appeal:
"1. The above case has been nolle prossed/no informationed."
.....
"6. We respectfully decline to prosecute the charge."
A member of the State Attorney's Office drew a line under "no informationed" and initialled that entry. Prior to his scheduled arraignment, Gatto was notified by a letter from the court clerk that his case had "been closed by the State Attorney on an announcement of No Information." He was further instructed: "Should the State decide to refile the case within ninety days of the date of the offense, you will be notified of the new hearing date."
A copy of the penal screening form was sent to the arresting officer, but he did not contact the State Attorney's Office, and that office made no effort to contact him in order to correct the flaws.
Gatto contends that the "no information" constituted a bona fide termination of the criminal prosecution against him and satisfied that requisite element of his malicious prosecution action. We agree.[4]
The essential element of a bona fide termination of the criminal prosecution in favor of the person bringing the malicious prosecution action has been held to be satisfied if there has been an adjudication on *381 the merits favorable to him or if there is a good faith nolle prosequi or declination to prosecute. Jackson v. Biscayne Medical Center, Inc., 347 So.2d 721 (Fla. 3d DCA 1977); G.C. Murphy Company v. Freshko, 293 So.2d 791 (Fla. 3d DCA 1974); Davis v. McCrory Corporation, 262 So.2d 207 (Fla. 2d DCA 1972). The defendants here attach unwarranted significance to the phrases "nolle prosequi" and "declination to prosecute," suggesting that if the abandonment of the criminal prosecution is not so described, there is not a bona fide termination.
A "nolle prosequi" is merely an acknowledgment that the particular matter will not be further prosecuted, Hewitt v. International Shoe Company, 110 Fla. 37, 148 So. 533 (1933), or an expression of unwillingness to prosecute, Wilson v. Renfroe, 91 So.2d 857 (Fla. 1956). The underlying reason for a "nolle prosequi," even as the underlying reason for a "declination to prosecute" or a "no information," may or may not be related to the merits of the cause being abandoned.[5] We perceive no substantive distinction between these forms of abandonment or termination; the selection of one form or another is dictated simply by the point in time when the decision to abandon or terminate is made.
There are no magic words for termination. A malicious prosecution complaint that merely alleges that "the County Prosecutor ... refused information on the said charge or charges and completely abandoned prosecution thereof" sufficiently pleads that element of the action. Calleja v. Wiley, 290 So.2d 123 (Fla. 2d DCA 1974).
"We would agree that the allegation of favorable termination might be made more specific, but there is no specific requirement that it be terminated in a particular way. See 52 Am.Jur.2d Malicious Prosecution § 34. The action for malicious prosecution does not depend on some specific event, because termination may be evidenced in a variety of ways... ." Calleja v. Wiley, supra, at 125.
See also Hammond Lead Products, Inc. v. American Cyanamid Co., 570 F.2d 668 (7th Cir.1977) ("any form of termination of defendant's cause of action satisfies the social policy which underlies the rule which requires plaintiff to prove as an element of his cause of action that the proceedings were terminated in his favor."); Prosser, Torts § 119 (4th ed. 1977) at 839 ("[I]t will be enough that the proceeding is terminated in such a manner that it cannot be revived, and the prosecutor, if he proceeds further, will be put to a new one. This is true, for example, of an acquittal in court, a discharge by a magistrate or a justice of the peace upon preliminary hearing, or by a governor in extradition proceedings, a failure of a grand jury to indict which results in discharge, the quashing of an indictment, the entry of a nolle prosequi or a dismissal, abandonment of the prosecution by the prosecuting attorney or the complaining *382 witness, or continuance beyond a time limit, where any of these things have the effect of ending the particular proceeding and requiring new process or other official action to commence a new prosecution.").
The defendants' reliance on Freedman v. Crabro Motors, Inc., 199 So.2d 745 (Fla. 3d DCA 1967), is misplaced. Freedman merely sets forth the rule that the termination must be bona fide, that is, not bargained for or obtained by the accused upon a promise of payment or restitution. Compare Shidlowsky v. National Car Rental Systems, Inc., supra (in which even though the criminal charges against Shidlowsky were dropped when he promised to pay the complainant, because Shidlowsky had made an identical promise to pay which had been rejected by the complainant before the bringing of the criminal charges, the case was distinguished from Freedman). Williams v. Confidential Credit Corporation, 114 So.2d 718 (Fla. 3d DCA 1959), is also inapposite. Williams merely holds that an asylum state's refusal to extradite will not satisfy the bona fide termination requirement. Since a refusal to extradite neither abandons the prosecution nor constitutes a decision on the merits, the decision is confined to that unique factual setting. But see Keller v. Butler, 246 N.Y. 249, 158 N.E. 510 (1927). Lastly, the defendants call our attention to the statement in Arison Shipping Co. v. Hatfield, 352 So.2d 539 (Fla. 3d DCA 1977), that a bona fide termination of a prior civil suit "must be an adjudication on the merits." In Arison, the termination was a dismissal for lack of subject matter jurisdiction. The holding in Arison, that to constitute a bona fide termination there must first be jurisdiction in the court in which the proceeding terminates, see also Roy v. Landers, 467 S.W.2d 924 (Mo. 1971), does not impact the present case. The statement in Arison equating a bona fide termination exclusively with an adjudication on the merits if read literally, is in conflict with Jackson v. Biscayne, supra, and G.C. Murphy v. Freshko, supra, which clearly state that either a favorable decision on the merits or a bona fide termination will suffice for a malicious prosecution action. The rule of Jackson and G.C. Murphy is the correct one.[6]
Since Gatto will be entitled to another trial on his claim that he was maliciously prosecuted by the defendants, we will not consider the error he asserts that evidence regarding his involvement in a prior shoplifting incident was wrongfully admitted at trial. Such evidence is not, per se, inadmissible, see, e.g., Section 90.404, Florida Statutes (1977), and we therefore leave it to the trial court to determine at retrial whether the appropriate predicate for its admission has been established.
Affirmed in part; reversed in part.
NOTES
[1] We treat the false arrest and false imprisonment as one, since the difference is one of terminology only. See Jackson v. Biscayne Medical Center, Inc., 347 So.2d 721, 723 (Fla. 3d DCA 1977).
[2] Gatto's most forceful testimony on this subject is, "I said  I said that getting  trying to get the books out of my hand, his hands came in contact with either part of my palm or my wrist or my arms. I mean, there's where the contact was."
[3] Even if it had been Stepp's intention to detain Gatto for the purpose of recovering the goods, in our view Stepp had probable cause to believe that the Publix goods had been unlawfully taken by Gatto. At the time of these events the existence of probable cause for believing that the person arrested committed larceny of the goods held for sale would insulate Stepp and Publix from liability. See § 901.34, Fla. Stat. (1977), repealed by Ch. 78-348, § 3, Laws of Fla. The probable cause to support a temporary detention of a suspected shoplifter by a merchant or the merchant's employee is less than the probable cause required to support a later prosecution. Food Fair Stores, Inc. v. Kincaid, 335 So.2d 560 (Fla. 2d DCA 1976); Rothstein v. Jackson's of Coral Gables, Inc., 133 So.2d 331 (Fla. 3d DCA 1961). Gatto's counsel at oral argument conceded that Publix employees had probable cause to believe that Gatto had stolen Publix goods and contended merely that this probable cause dissipated when Gatto denied his guilt. Assuming, arguendo, that Gatto's denial had the significance attached to it by his counsel, the only cause of action which arose thereafter was one for malicious prosecution.
[4] There are six elements to be established in a malicious prosecution case: (1) a criminal proceeding was commenced or continued against the plaintiff; (2) the defendant commenced or caused the commencement of such proceeding; (3) the criminal proceeding had a bona fide termination in the plaintiff's favor; (4) there was no probable cause for causing the commencement of the criminal proceeding; (5) the defendant acted with malice; (6) the plaintiff suffered damage. Shidlowsky v. National Car Rental Systems, Inc., 344 So.2d 903 (Fla. 3d DCA 1977); Applestein v. Preston, 335 So.2d 604 (Fla. 3d DCA 1976); Liabos v. Harman, 215 So.2d 487 (Fla. 2d DCA 1968). Even if the trial court were incorrect in concluding that there was no bona fide termination of the criminal prosecution in Gatto's favor, we would be compelled to uphold his directed verdict if there was a failure of proof on any of the other five elements. A correct ruling of a trial court will be sustained regardless of the incorrect reasons assigned for the ruling. Congregation Temple De Hirsch v. Aronson, 128 So.2d 585 (Fla. 1961); Green v. Bruns, 102 So.2d 610 (Fla. 1958); Postell v. State, 383 So.2d 1159 (Fla. 3d DCA 1980). We find, however, that viewed most favorably to Gatto, there was sufficient evidence of the other five elements to warrant submission to a jury. While we earlier said there was probable cause to justify Gatto's detention, we note that information learned through further investigation thereafter could establish a lack of probable cause subjecting the defendants to liability for causing the commencement of the later criminal prosecution. Food Fair Stores, Inc. v. Kincaid, supra.
[5] By way of example, the ABA Standards, The Prosecution Function § 3.9(a) and (b) (1970), point out the broad discretion vested in the prosecutor in making his decision to prosecute or not:

"3.9 Discretion in the charging decision.
"(a) In addressing himself to the decision whether to charge, the prosecutor should first determine whether there is evidence which would support a conviction.
"(b) The prosecutor is not obliged to present all charges which the evidence might support. The prosecutor may in some circumstances and for good cause consistent with the public interest decline to prosecute, notwithstanding that evidence exists which would support a conviction. Illustrative of the factors which the prosecutor may properly consider in exercising his discretion are:
"(i) the prosecutor's reasonable doubt that the accused is in fact guilty;
"(ii) the extent of the harm caused by the offense;
"(iii) the disproportion of the authorized punishment in relation to the particular offense or the offender;
"(iv) possible improper motives of a complainant;
"(v) prolonged non-enforcement of a statute, with community acquiescence;
"(vi) reluctance of the victim to testify;
"(vii) cooperation of the accused in the apprehension or conviction of others;
"(viii) availability and likelihood of prosecution by another jurisdiction."
[6] See Schoenbrod v. O'Neill, 375 So.2d 42 (Fla. 3d DCA 1979) (Schwartz, J., special concurring opinion).