Trustee completed an agreement regarding the final determination of tax liability.

On August 11, 1980 Andersen appealed the Referee's order disallowing its claim. On August 19, 1980 the Referee allowed the Trustee to withdraw its application to the Internal Revenue Service for a final tax liability determination. On August 21, 1980 the Referee granted the Trustee's request to amend the earlier order to delete the provision which made the disallowance of Andersen's claim contingent on a final tax liability determination. The Referee's August 1, 1980 Order approving the creditors' settlement agreement provides that the entire order must be vacated if the last appellate court to review the order fails to affirm it in its entirety. The trial court's ruling said:

> Without a doubt, it has been a boon to the estate that appellant has resolved six of the eight civil actions pending in various jurisdictions against it; the cases have been resolved in appellant's favor, a fact which inures to the benefit of the estate. Appellant's claim against The Colorado Corporation is a valid one, and as such had been allowed until July 1980. By its very nature, however, it is subject to disenfranchisement once it is found to result in an "undue delay" in estate administration. We find today that that point in time has been reached.
>
> The finding that contingent and unliquidated claim results in an "undue delay in the administration of the estate" is a discretionary one. *See, e.g., Wood v. Fiedler,* 548 F.2d 216 (8th Cir.1977). Though not expressly posited by appellant, we find no abuse of discretion on the part of the Referee in disallowing appellant's Claim No. 89. As yet unfulfilled duties are owing to The Colorado Corporation creditors by the Trustee and by the courts for nearly ten years. A settlement agreement which will cause a final distribution to creditors in discharge of these duties has been negotiated, executed and approved as fair and equitable by both the Referee in Bankruptcy, and by this Court. We cannot say, on balance, that the circumstances are such

that appellant is truly wronged by reason of the settlement agreement reached between parties in the court below or by the Referee's disallowance at this time of its contingent claim.

The question which this court must determine is whether any error was committed by the Bankruptcy Court or the district court in the rulings which were given refusing to extend additional time to the Arthur Andersen & Company to settle the claims against it and to bring this entire matter to a close. However, it would appear that the stance of the Arthur Andersen & Company is now and will continue to be an impediment to the completion of the settling of the estate. Much time has been granted already and there is no assurance that if an additional ten years were furnished that the Arthur Andersen & Company would succeed in bringing this to a close. Accordingly we are not disposed to grant any further time.

The judgment of the district court approving the judgment of the Bankruptcy court should be and the same is hereby affirmed.

**Jacqueline E. MORRIS,**
**Plaintiff-Appellant,**

v.

**ALBERTSON'S, INC., A Delaware Corporation, Defendant-Appellee.**

No. 82–5428.

United States Court of Appeals,
Eleventh Circuit.

April 28, 1983.

Michael S. O'Neal, Howell, Howell, Liles, Braddock & Milton, Charles C. Howell, III, Jacksonville, Fla., for defendant-appellee.

Before KRAVITCH, HENDERSON and ANDERSON, Circuit Judges.

ALBERT J. HENDERSON, Circuit Judge:

An unfortunate chain of events occurring at Albertson's, Inc. (Albertson's) store in Jacksonville, Florida, leads this court, in the exercise of diversity jurisdiction, to delve into Florida's shopkeeper's immunity law. Jacqueline E. Morris brought this action against Albertson's in the United States District Court for the Middle District of Florida claiming damages for false arrest. After the district court granted Albertson's motion for summary judgment, Morris appealed. Because we find from the undisputed facts that Morris is entitled to judgment as a matter of law, we reverse the judgment of the district court and remand for a determination of her damages.

On October 16, 1980, at approximately 5:15 p.m., Thelma Powell, an Albertson's employee, observed a young black woman tearing cellophane wrappers from cosmetics packages and secreting the contents in her purse. After surveying the woman's movements throughout the store, Powell saw her stop at the magazine counter.

At approximately 5:45 p.m., Morris, also a black woman, entered the Albertson's store and proceeded to look at the gospel record album display located on the opposite side of the magazine counter.

Meanwhile, Powell informed her supervisor, Miles Durrant, about her observation of the woman she believed had been shoplifting cosmetics. In an effort to apprehend the suspect, Durrant accompanied Powell to a location in the store where Powell could identify the woman. The two employees concealed themselves behind an aisle within viewing range of the magazine rack. Powell then peered around the corner, wit-

Michael J. Marees, Jacksonville, Fla., for plaintiff-appellant.

nessed the suspect positioned at the magazine rack, and advised Durrant that the alleged offender was the "black lady" standing by the magazine rack. She did not mention that there were two black women standing opposite each other at the counter. When Durrant looked around the corner, he observed only Morris standing at the album display which abutted the magazine rack. Unbeknown to Durrant, the suspect apparently had evaded the Albertson's employees by disappearing from the magazine area after Powell had seen her.

At that point Durrant took over the surveillance. He kept watch over Morris (instead of the true suspect) while she finished her shopping. She purchased some grocery items and then, when she attempted to leave the store, Durrant stopped her, accused her of shoplifting and asked her to accompany him to an upstairs office for questioning.

Morris professed her innocence and urged Durrant to verify that she was not the wrongdoer with the clerk who had allegedly identified her. However, in order to avoid a further embarrassing scene, Morris agreed to Durrant's request and accompanied him to the office. After Durrant took Morris to the office, he asked a clerk to sit with her. He then telephoned the police and requested them to come to the store to assist in the investigation. After contacting the police, he paged Powell and directed her to come to the office to check out Morris' story. When Powell arrived, she promptly informed Durrant that he had detained the wrong person. Subsequently, Durrant apologized and told Morris that she could leave. Morris declined to leave and telephoned the police to insure that they were on their way to the store. After the police and Morris' husband arrived and discussed the incident, Morris departed the store.

Morris brought this action against Albertson's claiming damages for false arrest. Albertson's denied liability on the grounds that it was immune from suit under Florida statute § 812.015. That provision stipulates that:

(3)(a) a law enforcement officer, a merchant, [or] a merchant's employee . . . who has probable cause to believe that merchandise . . . has been unlawfully taken by a person and that he can recover it by taking the person into custody may, for the purpose of attempting to effect such recovery or for prosecution, take the person into custody and detain him in a reasonable manner for a reasonable length of time . . . In the event the merchant [or] merchant's employee . . . takes the person into custody, a law enforcement officer shall be called to the scene immediately after the person has been taken into custody.

\*     \*     \*     \*     \*     \*

(5) A merchant [or] merchant's employee . . . who takes a person into custody, as provided in subsection (3) . . . for theft of merchandise shall not be criminally or civilly liable for false arrest or false imprisonment when the merchant [or] merchant's employee . . . has probable cause to believe that the person committed theft of merchandise . . .

Fla.Stat.Ann. § 812.015 (West Supp.1983).

After an oral argument before the district court at which the parties stipulated to the facts described above, the district court granted Albertson's motion for summary judgment. The court found that no material facts were in issue and determined that Albertson's was immune from suit because it had probable cause for the arrest. According to the district court, Albertson's had the requisite probable cause based upon the identification supplied by Powell to Durrant. Relying upon *Weissman v. K-Mart*, 396 So.2d 1164 (Fla.App.1981), the court reasoned that Durrant had probable cause to believe that Morris had taken merchandise because he received that information from a reliable source—his fellow employee, Powell. The court stated that since Morris was the only black lady at the magazine rack when Durrant looked in that direction, he was justified in acting upon Powell's "eyewitness information."

■ The district court correctly concluded that under Florida law the question of probable cause for an arrest under the shopkeeper immunity statute is a question of law for the court so long as the material facts are undisputed. *See City of Pensacola v. Owens,* 369 So.2d 328, 330 (Fla.1979); *Weissman v. K–Mart,* 396 So.2d 1164 (Fla. App.1981); *Rothstein v. Jackson's of Coral Gables, Inc.,* 133 So.2d 331 (Fla.App.1961). We also agree with the court's determination that no trial on the facts underlying the probable cause issue was necessary—the material facts stipulated to by the parties enabled the court to enter summary judgment. *See* Fed.R.Civ.P. 56. However, we cannot embrace the conclusion that the undisputed facts shield Albertson's from liability.

■ The Florida shopkeeper's immunity statute protects a merchant from a false arrest claim only when the merchant has probable cause to believe that the person detained has committed a larceny. *See, e.g., Gatto v. Publix Supermarket, Inc.,* 387 So.2d 377, 379 n. 3 (Fla.App.1980) ("the existence of probable cause for believing that the person arrested committed larceny of the goods held for sale would insulate [the merchant] from liability"). It is not sufficient for the merchant to have probable cause to believe that *someone* stole his property; the statute makes clear that the merchant must have reason to believe that *the person taken into custody* has committed the theft. Of course, the person detained does not have to be found guilty in order for the merchant to substantiate the claim that he had probable cause for the detention. *Food Fair Stores, Inc. v. Kincaid,* 335 So.2d 560 (Fla.App.1976). The Florida courts have indicated that "[t]he probable cause [necessary] to support a temporary detention of a suspected shoplifter by a merchant or a merchant's employee is less than the probable cause required to support a later prosecution." *Gatto,* 387 So.2d at 379, n. 3.

■ From our examination of the Florida cases which have upheld the merchant's probable cause defense, we have been unable to locate any factual patterns which are remotely similar to the scenario in this case. Rather, in each of the cases after the customer was observed engaging in suspicious activity, that customer was apprehended by the merchant. *See, e.g., Weissman,* 396 So.2d 1164 (customer re-entered store with stapled package and was observed fumbling with the package and leaving through an unauthorized exit); *Food Fair Stores,* 335 So.2d 560 (customer was seen placing packages of seeds in her pocket and departed store without paying for them); *Rothstein,* 133 So.2d 331 (store employee viewed customer placing store merchandise around her waist and moving away from area of display rack). These cases do not support Albertson's defense. It is undisputed that Morris was not acting in a suspicious manner. As the district court noted, she happened to be in the wrong place at the wrong time. Supp. Record at 24. She was stopped simply because Durrant thought she was someone else.

Nevertheless, Albertson's argued, and the district court found, that Durrant could rely upon Powell's "eyewitness identification." Although a police officer may rely upon trustworthy information provided by store employees in forming probable cause to arrest a shoplifter, *Weissman,* 396 So.2d at 1167, this principle does not automatically absolve Albertson's from liability. Albertson's is responsible for the conduct of its employees when they detain suspected shoplifters. Powell obviously did not have probable cause to detain Morris—she saw someone else secreting cosmetics. In their efforts to avoid detection by the suspect, Powell and Durrant hid behind the aisle while Powell attempted to identify the person she had previously observed in the act of shoplifting. She failed to advise Durrant that *two* black women were standing at the counter but that the suspect was situated on the magazine side. As a consequence, they each observed a different black woman in the general vicinity. Powell's inadequate description of the suspect as the "black lady at the magazine rack" coupled with the fact that Powell did not remain in the area to insure that she and Durrant had seen the same person, rendered the identification in-

sufficient to supply Durrant with probable cause to arrest Morris. Because two black females were in the same area, Powell should have furnished a better description of the suspected shoplifter. As Morris unfortunately discovered, Powell's identification of the shoplifter could lead to the detention of any number of innocent customers. The description simply was insufficiently precise under the circumstances to constitute trustworthy information upon which Durrant could act with immunity.

By requiring probable cause for detention, the Florida statute strikes a balance between a merchant's need for protection from the crime of shoplifting and the customer's legitimate interest in being free from groundless shoplifting accusations. Merchants may detain suspected shoplifters, but they must have some reasonable basis to suspect the person held. Durrant had inadequate information to lead him to believe that Morris had taken store merchandise. Therefore, because Albertson's did not have probable cause to detain her, Morris is entitled to judgment as a matter of law.

For the foregoing reasons, the judgment of the district court is REVERSED and the case is REMANDED for a determination of damages.