468 So.2d 349 (1985)
UNION OIL OF CALIFORNIA, AMSCO DIVISION, Appellant,
v.
John WATSON, Appellee.
No. 83-2772.
District Court of Appeal of Florida, Third District.
April 16, 1985.
Rehearing Denied May 29, 1985.
*351 Mershon, Sawyer, Johnston, Dunwody & Cole and Edward T. O'Donnell and Aubrey V. Kendall and James M. McCann, Miami, Adkins & Hardy, Coral Gables, for appellant.
Joe Unger, Proenza & White, Miami, for appellee.
Before HUBBART, BASKIN and FERGUSON, JJ.
FERGUSON, Judge.
Appellant, Union Oil of California, Amsco Division ("Union Oil"), was the defendant in a suit for malicious prosecution brought by appellee John Watson.
Appellant raises nine points on appeal which contain eighteen sub-issues. One of the questions, which goes to an element of a malicious prosecution claim, is dispositive of the case: whether the first action, in which Union Oil sued Watson, terminated in Watson's favor.
This action derives from an earlier lawsuit instituted in October, 1977, by Union Oil against Dade Oil, Inc., its sole owner and operating officer, John Watson, and Jerry Mabie, individually and as trustee for Southern States Petroleum, Inc. ("Southern States"), a dissolved Florida corporation. Union Oil's earlier suit included three counts. Count I, against Mabie, as trustee for Southern States, alleged the breach of a contract by which Union Oil extended credit to Southern States for petroleum products. Count II, against Mabie, as trustee for Southern States, and Dade Oil, sought recovery of certain intangible properties of Southern States (i.e., accounts receivable, customer lists, and proceeds), in which Union Oil held a security interest and which were then in the possession of Dade Oil. Count III, which incorporated the allegations in counts I and II, alleged damages caused by Dade Oil, John Watson, individually, and Jerry Mabie, individually and as trustee for Southern States, resulting from a conspiracy to convert Union Oil's security interest in the intangible property of Southern States.
Dade Oil and Watson moved for partial summary judgment on the conspiracy claim. The motion was denied. The court granted Union Oil's motion for partial summary judgment on counts I and II against Mabie, as trustee for Southern States, and against Dade Oil, finding both defendants liable as alleged. No appeal was taken by Dade Oil from the non-final partial summary judgment finding it liable to Union Oil for the return of, and an accounting on, the security agreement. See Fla.R.App.P. 9.130(a)(3)(C)(iv). Neither was an appeal taken from the final judgment for the obvious reason that Dade Oil prevailed in the trial on damages.
*352 Shortly before the trial on damages, Mabie, individually and as trustee for Southern States, entered into a settlement agreement with Union Oil whereby he agreed to pay $4000 and Union Oil agreed to release its claims against him in both capacities. The conspiracy to convert count against Watson was also voluntarily dismissed on or about May 6, 1981.[1] The pleadings are not a model of clarity but the parties appear to agree that the case went to trial against Dade Oil solely on the issue of damages caused by the conversion.
The undisputed facts as developed at trial show as follows. Jerry Mabie was the owner and operator of Southern States, a company which purchased petroleum products for retail resale. He signed a promissory note and agreement whereby he gave Union Oil a security interest in Southern States' general intangibles which included accounts receivable and customer lists. Sometime later Mabie decided to sell Southern States. He opened negotiations with Watson, another distributor of Union Oil's products. During those negotiations, William Dwyer, Union Oil's regional credit manager, reminded both Watson and Mabie of Union Oil's security interest in the assets of Southern States and of Southern States' continued indebtedness to Union Oil. Dwyer insisted that Union Oil be paid for the debt which was secured by the customer lists.
In October, 1976, Dade Oil consummated the purchase of Southern States' assets, which included its customer lists and telephone listing, for a price of $27,000 to be paid by Dade Oil to Southern States. The purchase price also included consideration for Mabie's agreement not to compete. By an addendum to the original contract, the terms were changed. Southern States was to receive $2,000 for the customer lists and telephone listing and the remaining $25,000 was to be paid to Jerry Mabie, individually, as consideration for his covenant not to compete. Watson and Mabie executed the addendum agreement between Southern States and Dade Oil as officers of their respective corporations;[2] Mabie signed also as an individual and Watson signed as a personal guarantor. Union Oil received no proceeds from the sale of Southern States' assets towards the payment of Southern States' indebtedness to Union Oil, which then amounted to approximately $13,700.
Union Oil contacted Watson after being unsuccessful in attempts to collect from Mabie. It learned from Watson that Southern States' assets had been transferred to Dade Oil; Watson then mailed Union Oil a copy of the customer lists. Failing in its attempts to collect payments directly from Southern States' customers or to have the debt satisfied by Mabie or Watson, Union Oil brought the action against Southern States, Mabie, Dade Oil and Watson.
After the trial on damages only, a final judgment was entered for Dade Oil. A jury found, obviously, that the customer lists, which had an undisputed $13,500 value when converted by Watson, had not diminished in value when they were returned to Union Oil by Watson.
Following the final judgment in Union Oil's lawsuit, Watson filed this malicious *353 prosecution action in which he alleged that Union Oil was motivated by actual malice and had acted wilfully and wantonly in commencing and continuing its action against him without probable cause to support its allegations. Watson sought compensatory and punitive damages because he had been "intimidated and frightened" by the suit and had suffered direct pecuniary loss, expenses, and mental anguish as a result thereof. A jury awarded him $100,000 in compensatory damages and $2,500,000 in punitive damages.
Union Oil contends that its voluntary dismissal of Watson from the earlier action proved nothing about the legitimacy of Union Oil's claim and there was otherwise no evidence of a termination of that action favorable to Watson. Watson counters that the voluntary dismissal of the conspiracy action as to him constituted a bona fide termination of the lawsuit in his favor.
The elements of malicious prosecution are (1) a legal proceeding commenced or continued against the plaintiff, (2) the defendant caused or commenced the proceeding, (3) the proceeding had a bona fide termination in plaintiff's favor, (4) there was no probable cause for commencing the proceeding, (5) the defendant acted with malice, and (6) the plaintiff suffered damage. See Shidlowsky v. National Car Rental Systems, Inc., 344 So.2d 903 (Fla. 3d DCA 1977), cert. denied, 355 So.2d 516 (Fla. 1978). If any one of the elements is lacking, an action for malicious prosecution will not lie. Tatum Bros. Real Estate & Investment Co. v. Watson, 92 Fla. 278, 109 So. 623 (1926); Harry Pepper & Associates, Inc. v. Lasseter, 247 So.2d 736 (Fla. 3d DCA), cert. denied, 252 So.2d 797 (Fla. 1971).
A bona fide termination of the proceeding in the plaintiff's favor is an essential element of a malicious prosecution action. DeMarie v. Jefferson Stores, Inc., 442 So.2d 1014, 1016 n. 1 (Fla. 3d DCA 1983); Weissman v. K-Mart Corp., 396 So.2d 1164 (Fla. 3d DCA 1981). That element is satisfied by either a favorable decision on the merits or a bona fide termination of the proceedings. Weissman, 396 So.2d at 1167; Gatto v. Publix Supermarket, Inc., 387 So.2d 377 (Fla. 3d DCA 1980).[3] There is no question here but that there was no favorable termination of the earlier proceeding as to Dade Oil, Inc. The narrow question presented on this point is whether the voluntary dismissal of Watson constituted a favorable termination as to him in light of the total circumstances of the dismissal.
Generally, whether a withdrawal or abandonment of the proceedings constitutes a favorable termination depends upon the circumstances under which the withdrawal occurs. Restatement (Second) of Torts § 674 comment on clause (b) (1977). Where dismissal is on technical grounds,[4] for procedural reasons, or any other reason not inconsistent with the guilt of the accused, it does not constitute a favorable termination. Jaffe v. Stone, 18 Cal.2d 146, 114 P.2d 335 (1941); Jackson v. Beckham, 217 Cal. App.2d 264, 31 Cal. Rptr. 739 (1963); Oppenheimer v. Tamblyn, 167 Cal. App.2d 158, 334 P.2d 152 (1959). The converse of that rule is that a favorable termination exists where a dismissal is of such a nature as to indicate the innocence of the accused. Hickland v. Endee, 574 F. Supp. 770, 779 (N.D.N.Y. 1983), aff'd, 732 F.2d 142 (2d Cir.1984); Lackner v. LaCroix, 25 Cal.3d 747, *354 602 P.2d 393, 395, 159 Cal. Rptr. 693, 695 (1979); Restatement (Second) of Torts § 660 comment a (1977). For example, where a dismissal is taken because of insufficiency of the evidence, the requirement of a favorable termination is met. Jackson, 31 Cal. Rptr. at 743; Oppenheimer, 334 P.2d at 154-155.[5] In order to determine whether the termination of an action prior to a determination on the merits[6] tends to indicate innocence on the part of the defendant one must look to whether the manner of termination reflects on the merits of the case. Lackner, 602 P.2d at 394-395, 159 Cal. Rptr. at 694-695; Minasian v. Sapse, 80 Cal. App.3d 823, 145 Cal. Rptr. 829 (1978).
In some cases a voluntary dismissal does reflect on the merits, as where the record contains evidence indicating a lack of probable cause. See, e.g., Kennedy v. Byrum, 201 Cal. App.2d 474, 20 Cal. Rptr. 98, 100-102 (1962) (allegations in plaintiff's complaint in initial action were found to be false, and evidence indicated that plaintiff knew that they were false). Other voluntary dismissals, however, are either not on the merits or entirely unreflective of the merits in that no implication of a lack of reasonable ground for the action follows from the dismissal. Jaffe, 114 P.2d at 339; Minasian, 145 Cal. Rptr. at 832. See, e.g., Hernon v. Revere Copper & Brass, Inc., 363 F. Supp. 96, 99 (E.D.Mo. 1973), aff'd, 494 F.2d 705 (8th Cir.), cert. denied, 419 U.S. 867, 95 S.Ct. 124, 42 L.Ed.2d 105 (1974) (dismissal of parties without prejudice, by stipulation, held not to be a favorable termination as to those parties); Bearup v. Bearup, 122 Ariz. 509, 596 P.2d 35 (Ct.App. 1979) (where criminal proceeding was dismissed because of pending civil litigation on the same matter, appellee failed to show that dismissal was in his favor); Lackner (termination of prior action by a statute of limitations defense is deemed a technical or procedural termination and thus not a favorable termination for purposes of a subsequent malicious prosecution action); Webb v. Youmans, 248 Cal. App.2d 851, 853, 57 Cal. Rptr. 11 (1967) (a dismissal resulting from negotiation, settlement, or consent is generally not deemed a favorable termination of the proceedings because it reflects ambiguously on the merits of the action); Arison Shipping Co. v. Hatfield, 352 So.2d 539 (Fla. 3d DCA 1977) (dismissal of a civil action for lack of subject matter jurisdiction is not considered an adjudication on the merits and thus not a bona fide termination of the prior suit). Cf. Burchell v. Bechert, 356 So.2d 377 (Fla. 4th DCA 1978), cert. denied, 367 So.2d 1122 (Fla. 1978) (the second successive voluntary dismissal of prior actions by plaintiff operated as an adjudication upon the merits of plaintiff's claim pursuant to Florida Rule of Civil Procedure 1.420(a)(1), and therefore resulted in a bona fide termination in favor of defendant in the prior actions).
The evidence which the trial court relied upon in support of a finding of liability against Watson's corporation for conversion, as alleged in count II, included (1) the written agreement, whereby Dade Oil purchased the customer lists and telephone listing, and Jerry Mabie executed a covenant not to compete, and (2) the addendum to that agreement, whereby Watson, as president of Dade Oil and as guarantor of *355 his corporation, agreed to pay $25,000 of the purchase price directly to Jerry Mabie, rather than to Southern States. Watson's argument, that he was exonerated by the dismissal of him individually, runs contrary to the rule which holds that a judgment against a corporation has a preclusive effect upon its sole owner as to issues decided in a prior litigation where the owner actively participated in the prior litigation, unless his interests are different from those of the corporation. Restatement (Second) of Judgments § 59(3)(a); see also Red Carpet Corp. of Panama City Beach v. Roberts, 443 So.2d 377 (Fla. 1st DCA 1983).
The earlier judgment established liability against Dade Oil for conversion based on the conduct of Watson. Watson actively participated in that litigation, and his interests and that of the corporation were not different. He makes no contentions to the contrary. On the facts of this case it is an untenable proposition that, although the earlier action where Watson's conduct was squarely in question terminated unfavorably to the corporation, at the same time that action terminated favorably to Watson.
Viewed in the light most favorable to Watson, the voluntary dismissal of the conspiracy to convert count is neutral as to favorable termination, which is still fatal to the malicious prosecution claim. See Lackner.[7]
Because the nature of the dismissal in the first case was technical, we are required to examine the record of that prior proceeding to determine whether the disposition was on grounds which were not inconsistent with the defendant's wrongdoing. On examination of pertinent parts of the earlier proceeding, which were made part of the record in this case, we find as a matter of law the total absence of any evidence upon which the jury could have found that the voluntary dismissal of that count in the complaint, which named Watson, individually, as a defendant, constituted a termination favorable to Watson. We agree with appellant that the judgment against Watson's solvent, wholly-owned corporation for conversion rendered it unnecessary to continue the action against Watson, individually,[8] based on a conspiracy to commit the conversion.[9] The reason for the dismissal was both sound and not inconsistent with wrongdoing on Watson's part.
Since we have found one of the elements of a malicious prosecution action lacking we need not reach the merits of appellant's other points on appeal. See Lasseter, 247 *356 So.2d at 737. Union Oil's motion for directed verdict should have been granted.
Reversed and remanded with instructions to enter judgment for the defendant.
NOTES
[1] In a letter dated November 13, 1980, which was admitted into evidence as Plaintiff's Exhibit 1, the attorney for Union Oil explained to the credit manager of Union Oil why he was voluntarily dismissing the conspiracy claim against Watson:

Inasmuch as we already have a Summary Judgment against Dade Oil, it is my suggestion to offer John Watson a voluntary dismissal on the question of conspiracy so that he will not be individually involved as a Defendant in this case... .
Inasmuch as Dade Oil, Inc. appears to be a solvent corporation, we should be able to collect on any judgment against Dade Oil, Inc. The only action remaining against Dade Oil, Inc. is the question of damages.
* * * * * *
[2] Union Oil contends that the addendum agreement is evidence of a conspiracy between Mabie and Watson to defeat its security interest. It is suggested that the agreement, by which the parties reallocated the sale proceeds from Southern States to Mabie, individually, was for the purpose of preventing Union Oil from attaching the proceeds to satisfy Southern States' indebtedness to it.
[3] Where a malicious prosecution action is based on an earlier criminal case, the alternative requirement of a "bona fide termination of the proceedings" is met by a good faith nolle prosequi or declination to prosecute. Gatto, 387 So.2d at 380-81, Jackson v. Biscayne Medical Center, Inc., 347 So.2d 721 (Fla. 3d DCA 1977). "Bona fide" as used in this sense means that the termination was not bargained for or obtained by the accused upon a promise of payment or restitution. Freedman v. Crabro Motors, Inc., 199 So.2d 745 (Fla. 3d DCA 1967).
[4] A dismissal of an earlier criminal prosecution on technical grounds includes those taken because of defects in the complaint or doubts as to the jurisdiction of the offense, or where the prosecution has been thwarted by suppression of evidence or flight by the defendant from the jurisdiction. Jaffe v. Stone, 18 Cal.2d 146, 114 P.2d 335, 338 (1941).
[5] According to the Restatement (Second) of Torts § 674 comment on clause (b) (1977), the same factors considered in determining whether a withdrawal or abandonment of a charge in a criminal action constitutes a termination in favor of the person against whom the action was brought, also apply to malicious prosecution actions where the prior proceeding is civil in nature. Thus the cases which hold that there is no favorable termination where a dismissal is taken for any reason not inconsistent with the guilt of the accused apply here where the prior action was civil rather than criminal.
[6] It is not necessary that there be a verdict or final determination upon the merits of the first suit in order to support an action for malicious prosecution. It is sufficient to show that the former proceeding had been legally terminated. The fact that such legal termination would not be a bar to another civil or criminal suit founded on the same alleged cause is not a defense to an action for malicious prosecution. Rich v. Siegel, 7 Cal. App.3d 465, 86 Cal. Rptr. 665, 666 (1970).
[7] "A termination `not inconsistent with wrongdoing' could imply neither innocence nor responsibility for the alleged misconduct, as in the case of a termination not on the merits. While properly a test for a termination other than a favorable termination (see Jaffe v. Stone, supra, 18 Cal.2d 146, 150, 114 P.2d 335), it is not the clearest of expressions for an unfavorable termination." Lackner, 602 P.2d at 395 n. 2, 159 Cal. Rptr. at 695 n. 2. Nonetheless, "a termination not inconsistent with wrongdoing" is not the expression of favorable termination which plaintiff is obligated to show in a malicious prosecution action because it does not reflect on his innocence.
[8] See supra note 1.
[9] Technically two persons acting in concert could wrongfully convert the property of a third person without necessarily having entered into a prior agreement to do so. If the argument had been made on the facts of this case, however, it would have been rejected as spurious. Part of the proof of the conversion was the Watson-Mabie addendum agreement. That addendum is evidence that an agreement to convert preceded the actual conversion. Where an accused is found liable for commission of a tortious act, he should not be heard to complain that he was also accused of having agreed with another person to commit that act, since the agreement to commit the act is less serious than the actual commission of the act.

Watson's "fright and intimidation" was caused initially by the opposing attorney's use of the word "conspiracy" to describe Watson's relationship with Mabie in the transactions. Conspiracy is a precise legal term which troubled Watson only because he misunderstood it to have, necessarily, criminally defamatory connotations. Conspiracy is defined as a combination or an agreement of two or more persons to accomplish an unlawful end or a lawful end by unlawful means. Renpak, Inc. v. Oppenheimer, 104 So.2d 642, 646 (Fla. 2d DCA 1958).