[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15015
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-01349-ODE

SANDRA R. GREEN,
JEROME R. GREEN,

Plaintiffs - Appellants,

versus

CITY OF LAWRENCEVILLE, GEORGIA,
JOHN W. ANDERSON,
in his individual capacity,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 20, 2018)

Before WILLIAM PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Sandra Green could not have imagined that, months after her debit card was

stolen, she and her brother would be arrested for card fraud. To be sure, they were innocent; after the charges were dismissed, the Greens sued the investigating detective and his employer, the City of Lawrenceville, under 42 U.S.C. § 1983 and Georgia law for unlawful arrest and malicious prosecution. The district court dismissed their complaint for failure to state a claim, and they now appeal. Because the Greens' complaint established that Detective Anderson had probable cause to arrest them under the circumstances, we affirm.

## I

We summarize the following facts from the Greens' first amended complaint, which we take as true for the purposes of our review. Following the theft of Sandra's debit card and checkbook, thieves used Sandra's closed accounts to make tens of thousands of dollars' worth of fraudulent purchases, often using a "forced transaction" technique.[1] On one such occasion, a woman posing as Sandra Green and a man posing as her husband made a forced-transaction purchase at Sosebee's Auto Supply in Lawrenceville, Georgia. Detective Anderson of the City of Lawrenceville Police Department began investigating after the fraud was discovered. The store owner reported that "Sandra" was a black woman with a

---

[1] In a "forced sale" or "forced transaction" scam, the perpetrator attempts to pay for a store purchase with an invalid credit or debit card, which the store's payment system declines. The perpetrator then purports to call the card issuer (sometimes actually calling a confederate who will speak to the store employee) and provides a fake authorization code that forces the system to override the denial and accept the sale. The fraud is eventually discovered when the card issuer charges back the transaction.

2

short afro hairstyle, 5'8" tall, and 35 to 40 years old, and that her "husband" was a black man, 6'0" tall, 180 pounds, and 35 to 40 years old. Detective Anderson prepared photo arrays containing pictures of, among others, the real Sandra and Jerome Green.[2] The store owner identified Sandra and Jerome as the thieves after Anderson indicated that the suspects were in the arrays and that they were brother and sister.

Later that day, Detective Anderson obtained warrants for the arrest of Sandra and Jerome for financial transaction card fraud, O.C.G.A. § 16-9-33. Meanwhile, the thieves continued making forced transactions and bouncing checks all over Georgia and Alabama. Sandra dutifully filed police reports when her bank notified her of attempts to use her account, and several law enforcement agencies investigated the crimes of "Sandra Green" and her associates. On at least two instances, Detective Anderson was included in email messages to multiple agencies regarding "a Sandra Green case." The real thieves were eventually arrested and convicted in other jurisdictions.

But in the meantime, Detective Anderson's warrants for the Greens remained active. The first officers who went to arrest Sandra decided not to do so after she explained that her card had been stolen and she showed them her

_____

[2] Sandra is a 5'3" tall black woman who was 23 years old and had long, straight hair; her brother Jerome is a black man who was 26 years old.

collection of police reports. Sandra then arranged for a meeting with Detective Anderson, where she again explained that her card had been stolen and showed her police reports. She also provided alibis for herself and Jerome and noted that another investigator had told her they had identified, but not yet arrested, a suspect. Detective Anderson did not believe her. Sandra and Jerome were both eventually arrested; the charges against them were administratively dismissed nearly three years later.

The Greens sued Detective Anderson under 42 U.S.C. § 1983 for unlawful seizure and malicious prosecution in violation of the Fourth Amendment, and under state law for malicious prosecution, O.C.G.A. § 51-7-40, demanding punitive damages and attorney's fees. They sued the City of Lawrenceville for municipal liability for Detective Anderson's violations of state law. Detective Anderson and the City moved to dismiss the complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), and the district court granted the motion, dismissing the complaint with prejudice. The Greens then moved to alter or amend the judgment, Fed. R. Civ. P. 59(e), to allow them to amend their complaint, and the district court denied the motion because amendment would be futile. The Greens now appeal.

## II

We agree with the district court that the Greens' complaint failed to state a claim for malicious prosecution. We review a dismissal for failure to state a claim

de novo. Mikko v. City of Atlanta, 857 F.3d 1136, 1141–42 (11th Cir. 2017). A claim for malicious prosecution[3] under § 1983 and Georgia law requires showing "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Kjellsen v. Mills, 517 F.3d 1232, 1237 (11th Cir. 2008) (quoting Wood v. Kesler, 323 F.3d 872, 881–82 (11th Cir. 2003)). "Because lack of probable cause is a required element, . . . the existence of probable cause defeats the claim." Id. Probable cause to arrest exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense." Wood, 323 F.3d at 878 (quoting Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998)).

The factual content of the Greens' complaint actually establishes that Detective Anderson had probable cause to arrest them, despite its assertion that Detective Anderson lacked probable cause—the kind of "formulaic recitation of the elements of a cause of action [that] will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Greens must instead plead "factual content that

---

[3] The district court dismissed the Greens' claim for unlawful seizure because the proper § 1983 claim when a plaintiff is arrested with a warrant is malicious prosecution, not false arrest. See Whiting v. Traylor, 85 F.3d 581, 585 (11th Cir. 1996). The Greens have not appealed this issue.

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). They have not.

"Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." Rankin, 133 F.3d at 1441. Detective Anderson properly relied not only on the store owner's complaint that Sandra Green and another person committed card fraud, but also on the owner's visual identification of Sandra and Jerome. Cf. Morris v. Albertson's, Inc., 705 F.2d 406, 408 (11th Cir. 1983). The Greens alleged that Detective Anderson impermissibly influenced the identifications when he told the store owner that the suspects were in the arrays and that they were brother and sister, but these allegations do not defeat the probable cause that the identifications provided. The Greens have not alleged that they bear a family resemblance, and under our precedent, mentioning that a photo array contains a suspect, without more, is not problematic. See Cikora v. Dugger, 840 F.2d 893, 896–97 (11th Cir. 1988). The Greens also allege that Detective Anderson later improperly ignored Sandra's averments of innocence, but he was entitled to disbelieve her. Marx v. Gumbinner, 905 F.2d 1503, 1507 n.6 (11th Cir. 1990). All of these circumstances caused Detective Anderson to reasonably believe that the Greens were the perpetrators of the fraud at Sosebee's Auto Supply.

The Greens argue that Detective Anderson's belief was unreasonable because he ignored relevant information about other agencies' investigations. We

6

disagree. Although "[a]n arresting officer is required to conduct a reasonable investigation to establish probable cause," Rankin, 133 F.3d at 1435, he "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," Cozzi v. City of Birmingham, 892 F.3d 1288, 1297 (11th Cir. 2018) (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1229 (11th Cir. 2004)). What the complaint alleges that Detective Anderson knew before he obtained the warrants—two emails from other law enforcement agencies about "a Sandra Green case"—supports the reasonableness of investigating and arresting Sandra. Unlike the officers in Kingsland and Cozzi, whom we faulted for failing to obtain "easily discoverable facts" right under their noses before making warrantless arrests, id., Anderson conducted a reasonable investigation of the crime at Sosebee's Auto Supply before applying for an arrest warrant. He was not required to "take 'every conceivable step . . . to eliminate the possibility of convicting an innocent person.'" Rankin, 133 F.3d at 1436 (quoting Tillman v. Coley, 886 F.2d 317, 321 (11th Cir. 1989)).

All told, the Greens' allegations establish that the commission of card fraud in the name of Sandra Green, together with the store owner's identification of photographs of Sandra and Jerome as the perpetrators, gave Detective Anderson probable cause to obtain a warrant for the Greens' arrest. Because the Greens' complaint establishes no basis for recovery against Detective Anderson under

§ 1983 or Georgia law, we also affirm the dismissal of the complaint for failure to state a claim against the City of Lawrenceville for municipal liability for Anderson's conduct.

## III

The district court did not abuse its discretion when it denied the Greens' post-judgment motion to amend their complaint. We review the denial of a motion to amend for abuse of discretion, although if the motion was denied based on an issue of law, we review that decision de novo. U.S. EEOC v. St. Joseph's Hosp., Inc., 842 F.3d 1333, 1343 (11th Cir. 2016).

We encourage district courts to liberally grant plaintiffs leave to amend complaints even after dismissal, but they are not required to do so following a dismissal with prejudice. Czeremcha v. Int'l Ass'n of Machinists, AFL–CIO, 724 F.2d 1552, 1556 & n.6 (11th Cir. 1984). Leave to amend may be denied when, as here, such amendment would be futile. Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc., 376 F.3d 1065, 1077 (11th Cir. 2004). We agree with the district court that the Greens' Rule 59(e) motion sought only to restate already-pleaded facts and to reiterate already-rejected arguments. Their proposed amendment would not have defeated the probable cause that their other allegations established. The district court acted within its discretion when it denied this legally futile amendment.

8

**IV**

We appreciate that the ordeal of being arrested, the humiliation of being accused, and the threat of being prosecuted added great insult to the injury Sandra suffered when she was robbed and impersonated. But "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." Baker v. McCollan, 443 U.S. 137, 145 (1979). Because § 1983 does not allow the Greens to recover on the basis of these allegations, the judgment of the district court is **AFFIRMED.**