857 So.2d 991 (2003)
Kenya R. DOSS, Appellant,
v.
BANK OF AMERICA, N.A., Appellee.
No. 5D02-3310.
District Court of Appeal of Florida, Fifth District.
October 31, 2003.
*992 Eric W. Ludwig of Eric W. Ludwig, P.A., Altamonte Springs, for Appellant.
Ashley N. Rosenthal and John R. Hamilton, of Foley & Lardner, Orlando, for Appellee.
SHARP, W., J.
Kenya Doss appeals from a final summary judgment against her and in favor of Bank of America (Bank), in a malicious prosecution suit she filed against the Bank. The underlying suit on which the malicious prosecution is based was a civil action in which the Bank sued Doss to collect approximately $5,000.00. The Bank paid $5,000.00 to an unknown person or persons, who presented bogus checks, on which Doss' endorsement was forged. In granting summary judgment, the trial *993 court ruled that Doss' malicious prosecution suit could not proceed because, based on the undisputed facts in the record, there had not been a bona fide termination of the underlying suit in Doss' favor, which is an essential element in a malicious prosecution suit.[1] We reverse because we find, based on this record, that the first suit was terminated in favor of Doss, even though it was dismissed on joint stipulation by the parties.
In contrast to some of the cases cited by the parties in this appeal, the facts and circumstances of the underlying case and its joint dismissal are not in dispute. Thus, it is not necessary for us to remand this case to a fact-finder to resolve disputed questions of fact. See Alamo Rent-A-Car, Inc. v. Mancusi, 599 So.2d 1010 (Fla. 4th DCA 1992), approved in part, quashed in part, 632 So.2d 1352 (Fla. 1994); Guzman v. Toyota Motor Credit Corp., 745 So.2d 1123 (Fla. 5th DCA 1999). Rather, the issue is one of law for the court to resolve. See Jones v. State Farm Mutual Automobile Ins. Co., 578 So.2d 783 (Fla. 1st DCA 1991); Della-Donna v. Nova University, Inc., 512 So.2d 1051 (Fla. 4th DCA 1987); Union Oil of California v. Watson, 468 So.2d 349 (Fla. 3d DCA 1985). See also Villa v. Cole, 4 Cal. App.4th 1327, 6 Cal.Rptr.2d 644 (1992).
The Facts.
The record establishes that Doss opened an individual savings account with the Bank in May of 2000, with a deposit of $200.00. She was employed at that time by Miracle Ear as a telemarketer, and she used the savings account to deposit her earnings. She had no checking account and no checks on this account, but would make cash withdrawals from it to pay her rent and other living expenses. There was little activity in this account, and the balance was always quite low.
Some time between July 14, 2000 and July 17, 2000, twenty-eight checks were presented to various branches of the Bank in central Florida to be cashed. Their total exceeded $5,000.00. The checks were drawn on an account in the name of Layla King, which purported to be with the First Union Bank. They named Doss as the payee of the check, and they were endorsed on the back with what purported to be Doss' signature. The person cashing the checks presented identification indicating she was Doss. The Bank accepted the checks, and paid the person the cash value of each check.
As it turned out, there was no account in the name of Layla King at the First Union Bank, or at least no current one, and First Union returned the checks. The Bank then charged Doss' savings account based upon their claim of her liability allegedly created by her endorsement on the bogus checks. At that time, Doss had a small balance in her savings account of $37.14. The Bank set that off and closed her account.
The Bank referred this matter to its fraud investigation department. Roy Gonzaque was assigned to investigate it. He and others from the Bank called Doss to determine whether she had cashed the twenty-eight checks, or had participated in cashing them in any way. Gonzaque testified in his deposition that he concluded Doss had nothing to do with the check-cashing scheme, and that a "customer impersonator" had defrauded the Bank. This kind of fraud had been perpetrated against the Bank more than ten times in the past *994 five years. In concluding that Doss was not responsible for the fraudulent activity, he recommended that no collection be pursued against her. His report was filed with his supervisor, Donald Blinn, in September of 2000 and placed on the Bank's computer system.
Blinn testified in his deposition that he had no basis to question Gonzaque's report and he "closed out" the file in January of 2001. He had heard nothing more about this matter until shortly before his deposition in March of 2002, in connection with this malicious prosecution suit, when he learned that the Bank had filed suit against Doss, seeking collection of the bogus or forged checks, fees, interest, and other penalties.[2]
On May 12, 2001, for reasons no one could explain[3] the Bank filed suit against Doss in the County Court for Orange County, Florida, for damages in the sum of $5,309.80, plus interest, costs and attorney's fees. The case had not proceeded very far before the Bank discovered it had a problem based on its fraud investigation report. On August 22, 2001, an attorney for the Bank wrote a letter to Doss' attorney offering to settle the case "for the amount you say is due, that being $37.14." He also enclosed a copy of the savings account contract between Doss and the Bank, which indicated there was no basis for an award of attorney's fees. Doss and her attorney agreed to a joint stipulation for dismissal on that basis, and the County Court dismissed the lawsuit and counterclaim with prejudice. The Bank paid Doss $37.14.
Thus the stage was set for this proceeding. In December 2001, Doss sued the Bank in circuit court for malicious prosecution, based on its having sued her to collect the sums it lost in paying the bogus or forged checks. The Bank filed an answer and an affirmative defense, claiming that there had not been a "bona fide termination" of the collection suit because it was dismissed by the joint stipulation of the parties. The Bank argued the joint dismissal was bargained for because Doss received $37.14 (the balance of her savings account prior to the Bank's wrongful setoff due to the bogus or forged checks), waived any interest due on that sum, and neither party pursued attorney's fees. The Bank filed a motion for summary judgment on the same grounds. After hearing argument of counsel at the summary judgment hearing, the trial court granted the Bank's motion.
The Law.
It is axiomatic that a plaintiff in a malicious prosecution case must, as an essential element of that cause of action, establish that the prior litigation giving rise to the malicious prosecution suit ended with a "bona fide termination" in that party's favor. Alamo Rent-A-Car; Union Oil of California at 353. This is a fancy phrase which means that the first suit, on which the malicious prosecution suit is based, ended in a manner indicating the original defendant's (and current plaintiff's) innocence of the charges or allegations contained in the first suit, so that a court handling the malicious prosecution suit, can conclude with confidence, that the termination of the first suit was not only favorable to the defendant in that suit, but also that it demonstrated the first suit's lack of merit. Prosser, Torts 4th ed, at 838; 850-51; Restatement of Torts 2d *995 (1077), § 660 Comment a; Villa v. Cole. Therefore, suits that terminate because of technical or procedural reasons or considerations other than the merits of the first suit, are not "bona fide terminations" and will not support a malicious prosecution suit. See Union Oil (comprehensive discussion by Judge Ferguson).
Because lawsuits that end as the result of settlements or joint stipulations generally do not clearly demonstrate the lack of merit of the first suit, they are usually found insufficient to constitute "bona fide terminations" of the prior litigation. Della-Donna; Webb v. Youmans, 248 Cal.App.2d 851, 57 Cal.Rptr. 11 (1967); Villa v. Cole; Prosser, Torts 4th ed., at 854. However, Florida courts take the view that bargaining or negotiating for the termination of litigation does not always negate the bona fide nature of the termination. Alamo Rent-A-Car at 1355. Whether a withdrawal or abandonment of a lawsuit constitutes a bona fide termination in favor of a person against whom the suit was brought, depends on the total circumstances surrounding the withdrawal or abandonment. Union Oil of California, 468 So.2d at 355; Restatement Torts 2d, § 674 comment on clause (b). It is favorable if the dismissal indicates the lack of merit of the case against the defendant in a civil case.[4]
Analysis.
The Bank argues that its payment of $37.14 was "bargained for" as part of the joint stipulation, and although not a substantial sum, it was sufficient to indicate the conclusion of the collection suit was not a bona fide termination. In our view, it is not the paucity of the amount involved in the counterclaim that is critical; it is its nature.
In the collection suit, the Bank had sought to recover the sums from Doss which it paid out on the bogus or forged checks, as it admitted in this lawsuit, completely without legal justification. As part of the effort to recover those losses, it unilaterally "setoff" her savings account, which then had the small balance of $37.14. But the Bank had no more legal right to take Doss' savings account balance than it did to sue her for the bogus or forged checks it cashed. Restitution of Doss' savings account balance was inextricably connected with the Bank's misguided collection suit, and if anything, its payment demonstrated the Bank's opinion of Doss' complete innocence in the total circumstances surrounding the collection suit.
The Bank also argues that the joint stipulation to dismiss was bargained for because Doss waived her right to claim interest on her $37.14 savings account balance. In Doss' response to the Bank's attorney's letter, he said his client was willing to waive her claim to interest. Thus, the Bank argues, the termination of the collection suit was not totally in Doss' favor. Considering the rate at which the Bank pays interest on savings accounts, the principal sum on which interest should have been paid ($37.14), and the time involved during which the Bank should have paid interest,[5] this sum is de minimus. As suggested by Doss' attorney, it might be sufficient to pay postage on two items of first class mail, but that's about it.
The Bank also argues that the joint stipulation to dismiss was bargained for because Doss did not pursue her claims for attorney's fees or costs. These items were pled for by both parties in the collection suit, but were not mentioned in the joint stipulation, or the parties' correspondence.
*996 However, there was an indirect reference to attorney's fees in a letter that Doss' attorney sent to the Bank's attorney, accepting the Bank's proposed settlement. Doss' attorney said his client accepted the Bank's proposal "in reliance" on the fact that the Bank had furnished him with an accurate copy of the contract governing the savings account. The contract apparently indicated no basis for an attorney's fee award for either party. Since there was no basis to claim attorney's fees under the contract, it seems quite a stretch to say attorney's fees were "waived" by the joint stipulation for dismissal.
It is true that an award of section 57.105, Florida Statutes, attorney's fees in the collection suit were foreclosed by the joint stipulation and dismissal of it, since Doss did not move for or pursue them. However, we do not think that a party should be foreclosed from bringing a malicious prosecution suit merely because the party did not move for and pursue section 57.105 fees in the first proceeding. Nor could we find any authority for that proposition. The Bank has presented no evidence[6] in this case that section 57.105 was a factor in the joint stipulation. An award of fees under section 57.105 does not come easily, even though amendments have apparently expanded this remedy. See, e.g., John P. Fenner, New Section 57.105 Lawyer Sanctions, Our Ethics and the Florida Constitution, 77 Fla. B.J. 26 (May 2003). Further, it is likely that only a small amount of attorney's fees had been earned in the collection suit by Doss' counsel, since the suit was brought in the county court, and there had been little or no discovery.
Nor do we think Doss' tacit surrender or failure to pursue costs in connection with the collection suit is a sufficient basis to show that the termination was not in her favor. As stated above, she was a defendant in a county court case which ended very shortly after it was filed, with little legal work or effort on the part of either side. Her costs were not shown to be anything but minimal. The Bank has not demonstrated that there was any basis to conclude there was a compromise on costs sufficient to disqualify the dismissal as a bona fide termination.
Further, the policy in this state is to encourage settlement of cases expeditiously, especially ones which the parties agree have no merit. If we refused to allow Doss to pursue her malicious prosecution case because she did not require that the collection suit be played out in county court to its finality on the merits, including her $37.14 counterclaim, we would be in derogation of this policy.[7]
The undisputed circumstances of the joint stipulation to dismiss the Bank's collection case demonstrate the Bank's recognition that it had no legal basis to claim Doss was responsible for the bogus or forged checks, or that it had any legal basis to seize her savings account to setoff its losses on the forged checks. Both the collection suit and the counterclaim arise out of the same facts and fall by the same legal principles.
Wisely, the Bank's attorney sought to drop the collection suit when apprized of the facts. However, as Doss points out in her appellate brief, under the current Rules of Civil Procedure, the Bank could *997 not take a voluntary dismissal of its suit because Doss had filed a counterclaim.[8] Thus, a joint stipulation was necessary to obtain dismissal of the collection suit. These circumstances weigh on the side of finding a bona fide termination in this case, because the joint stipulation looks more like a voluntary dismissal, which is generally considered a termination in favor of the defendant in the underlying action, where the record contains evidence indicating a lack of probable cause.[9]
We conclude that the joint stipulation and dismissal of the collection suit does not bar Doss from bringing this malicious prosecution suit against the Bank on the ground that there was no bona fide termination in her favor. The Bank has failed to show that the joint stipulation for dismissal was entered into for any reason not consistent with its recognition of Doss' lack of liability in the collection suit and its wrongful seizure of her savings account balance. There was no genuine compromise on Doss' part as she gave up nothing of value. There was no other reason apparent in this record or suggested by the Bank apart from the merits of the collection suit, for the joint stipulation and dismissal.
Accordingly, we reverse. On remand, Doss must establish the other essential elements of a malicious prosecution suit, about which we venture no opinion.
REVERSED and REMANDED.
PETERSON and TORPY, JJ., concur.
NOTES
[1] See Prosser, Torts 4th ed., Misuse of Legal Procedure, at 850; Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352, 1355 (Fla.1994); Union Oil of California v. Watson, 468 So.2d 349, 353 (Fla. 3d DCA 1985).
[2] He could offer no explanation as to why this matter had been sent for collection, except that it was handled by a different department of the Bank, which had not communicated with him, or his department.
[3] When the judge asked at the summary judgment hearing, why the Bank brought the collection suit, the Bank's attorney simply said: "One arm of the Bank didn't talk to the other. That's why."
[4] Union Oil of California v. Watson, 468 So.2d 349, 354 (Fla. 3d DCA 1985).
[5] The Bank's wrongful closing of the account and the termination of the collection lawsuit.
[6] A defendant in a malicious prosecution case has the burden to bring forward evidence to show the termination was not "bona fide" once the plaintiff submits evidence of a bona fide termination. Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352 (Fla.1994).
[7] The offer of judgment statute, section 768.79, adds the strong inducement of attorney's fees in an effort to promote settlements. See City of Delray Beach v. Keiser, 699 So.2d 855, 857 n. 3 (Fla. 4th DCA 1997), Farmer, J., dissenting.
[8] Florida Rule of Civil Proc. 1.420(a)(2). See Rogers v. Publix Super Markets, Inc., 575 So.2d 214 (Fla. 5th DCA 1991). See also Johnson v. Allen, Knudsen, DeBoest, Edwards & Rhodes, P.A., 621 So.2d 507 (Fla. 2d DCA 1993).
[9] See Lackner v. LaCroix, 25 Cal.3d 747, 159 Cal.Rptr. 693, 602 P.2d 393 (1979); Kennedy v. Byrum, 201 Cal.App.2d 474, 20 Cal.Rptr. 98, 100-02 (1962).