[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 11, 2004
THOMAS K. KAHN
CLERK

No. 03-11046

D. C. Docket No. 02-01199-CV-8-T-27TGW

FRANCISCO J. RIVERA,

Plaintiff-Appellant,

versus

STEPHEN A. LEAL, individually,

Defendant-Appellee.

Appeal from the United States District Court
for the Middle District of Florida

**(February 11, 2004)**

Before ANDERSON and BLACK, Circuit Judges, and NANGLE[*], District Judge.

BLACK, Circuit Judge:

---

[*]Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

We are called upon to determine whether a prosecutor is absolutely immune to suits for money damages under 42 U.S.C. § 1983, where the prosecutor obtained the driver's license records of a wrongly-arrested person and one other, erroneously concluded the second person was actually the wanted party, and shared that (unsworn) opinion with a state judge during a court proceeding. We conclude the prosecutor is absolutely immune.

## I. BACKGROUND

The issue in this case is whether the prosecutor can meet his burden under Federal Rule of Civil Procedure 12(b)(6) by showing that absolute immunity is justified for each of Appellant's claims. We are required to "make two important assumptions about the case: first, that [Appellant's] allegations are entirely true; and, second, that they allege constitutional violations for which § 1983 provides a remedy." *Buckley v. Fitzsimmons*, 509 U.S. 259, 261, 113 S. Ct. 2606, 2609 (1993). The following "statement of facts is therefore derived entirely from [Appellant's] complaint and is limited to matters relevant to [the prosecutor's] claim to absolute immunity." *Id.*

This case concerns three men, each named Francisco Rivera, and the confusion that has resulted from attempting to determine which one of them committed grand theft auto in 1993.

Rivera #1 is the man that actually committed the crime. After he failed to appear at his arraignment, a capias was issued for his arrest.

By mistake, Rivera #2 was arrested instead. At the time of the arrest, Appellee Stephen A. Leal was an Assistant State Attorney in the Thirteenth Judicial Circuit for Hillsborough County.

After posting bond, Rivera #2 was released from custody. He then retained an attorney to represent him. The attorney subsequently contacted Leal and provided him with various documents demonstrating that his client—Rivera #2—had not entered the United States until 1994 and thus could not have committed the 1993 offense. These documents included a foreign birth certificate, foreign educational records, and copies of plane tickets.

The case against Rivera #2 was continued for a hearing as to whether Rivera #2 was the same person as Rivera #1. Prior to the commencement of this hearing, Leal sought to obtain additional confirmation that Rivera #2 was not Rivera #1 by comparing their respective driver's license records (records). Leal had no trouble obtaining Rivera #2's record. Instead of getting Rivera's #1's record, however, Leal received that of Rivera #3 (Appellant).

The records of Rivera #1 and Appellant contained different social security numbers, different driver's license numbers, and different dates of birth.

3

Nevertheless, Leal treated Appellant's record as if it were Rivera #1's. And, given that Rivera #2's record showed him to be a different person entirely, Leal concluded Rivera #2 had been erroneously arrested.

Leal appeared in state court for the hearing set to determine whether Rivera #2 was Rivera #1. As the following excerpt from the transcript of the proceeding indicates, Leal neither presented sworn testimony nor requested that a new capias be issued:

Mr. Leal:     Your Honor, we had continued this case because [Rivera #2] who's in court today was maintaining that he was not the person involved in this particular incident. I researched it and pulled driving records on both individuals and managed to get photographic IDs of each individual. . . .

              The wrong person has been arrested in this case. There is . . . [Appellant] who resides in Miami who is the one that we wanted and then there is this person who is [Rivera #2]. They've also provided documentation showing [Rivera #2] wasn't even in the country at the time this offense occurred.

The Court:    Okay.

Mr. Leal:     So at this point in time I'm not sure how best to proceed. . . .

* * *

[The court asked Leal a series of questions about the driver's license records, all of which Leal answered in a straightforward manner.]

4

\* \* \*

> The Court:  We'll [release Rivera #2] . . . and issue a capias for [Appellant].

The capias that issued with Rivera's #2's release contained all of Appellant's personal information except for his social security number, which it gave as Rivera #1's.  Appellant was arrested on this capias and held without bond.  After approximately 14 days, the State dropped its case and released Appellant.

Appellant brought this § 1983 action for damages against Leal alleging violation of his rights under the Fourth and Fourteenth Amendments (Count I: "Fourth Amendment Claim" and Count II: "*Franks v. Delaware* Claim").  Appellant also sought relief under Florida law for malicious prosecution (Count III: "Malicious Prosecution Claim").  Leal moved, pursuant to Rule 12(b)(6), to dismiss all of Appellant's claims for failure to state a claim upon which relief can be granted.  Leal asserted absolute immunity.

The district court found Leal's actions were shielded by absolute immunity and dismissed the suit.  Appellant contends the district court erred.

## II.  STANDARD OF REVIEW

We review de novo the dismissal of a complaint under Rule 12(b)(6). *Lotierzo v. A Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002).

## III.  DISCUSSION

The Supreme Court has repeatedly endorsed the use of a "functional approach" when determining whether a prosecutor is entitled to absolute immunity. *Buckley*, 509 U.S. at 269, 113 S. Ct. at 2613. Thus, we look to "the nature of the function performed, not the identity of the actor who performed it." *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 229, 108 S. Ct. 538, 545 (1988)). The Court has also explained that "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486, 111 S. Ct. 1934, 1939 (1991).

A prosecutor is entitled to absolute immunity for all actions he takes while performing his function as an advocate for the government. *Buckley*, 509 U.S. at 273, 113 S. Ct. at 2615–16. The prosecutorial function includes the initiation and pursuit of criminal prosecution, *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S. Ct. 984, 995 (1976), and most appearances before the court, including examining witnesses and presenting evidence, *see Burns*, 500 U.S. at 492, 111 S. Ct. at 1942.

6

The prosecutorial function, however, specifically does not include functioning as either an investigator, *Buckley*, 509 U.S. at 275, 113 S. Ct. at 2617, or as a complaining witness, *Kalina v. Fletcher*, 522 U.S. 118, 129–31, 118 S. Ct. 502, 509–10 (1997).

Appellant contends Leal functioned as both an investigator and a complaining witness. We disagree.

A.    *Whether Leal Functioned as an Investigator*

A prosecutor functions as an investigator when he "search[es] for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested." *Buckley*, 509 U.S. at 273, 113 S. Ct. at 2616. For example, a prosecutor so functions if, pre-indictment, he visits a crime scene, endeavoring to identify the source of a bootprint left there. *Id.* at 274–75, 113 S. Ct. at 2616. Similarly, a prosecutor also functions as an investigator when he participates in the search of a suspect's apartment. *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1280 (11th Cir. 2002).

Appellant argues that Leal functioned as an investigator when he obtained the driver's license records of both Rivera #2 and Appellant and compared them. In Appellant's view, at the time Leal obtained the records, he was not in court, and so could not have been functioning as an advocate.

7

Appellant's argument fails to persuade for several reasons. First, obtaining public records and examining them constitutes, at most, a minimal degree of investigation. Unlike the prosecutors in *Buckley* and *Rowe*, Leal never left his normal work environment. He did not go to the scene of a crime, nor did he participate in a search. All he did was obtain and examine information that was readily available to anyone. Consequently, it is conceptually difficult to view his actions as rising to the level of police work.

Second, there is no indication that Leal was trying to establish probable cause to arrest Appellant. In fact, the purpose of the hearing was to establish whether Rivera #2 was innocent. Leal never even requested a capias. Indeed, the most he asked the court to do was to provide guidance as to "how best to proceed."

Third, Leal consulted the driver's license records only because Rivera #2 claimed to have been mistakenly arrested. As the Supreme Court has noted, "[t]here is a difference between the advocate's role in *evaluating evidence* . . . as he prepares for trial . . . and the detective's role in searching for the clues . . . that might give him probable cause to recommend that a suspect be arrested." *Buckley*, 509 U.S. at 273, 113 S. Ct. at 2616.

8

The information Rivera #2 communicated to Leal turned out to be true; thus, Leal shared it with the court. Had the information provided by Rivera #2 been false, however, Leal might still have had to address it at trial. Either way, Leal was functioning as an advocate because he was preparing for "the initiation of judicial proceedings or for trial." *See id.* at 273, 113 S. Ct. at 2615.

Fourth, and perhaps most importantly, it is squarely in the public interest for prosecutors to be absolutely immune with respect to their efforts to clear innocent persons wrongly arrested. A hallmark of effective judicial process is the care taken to ensure that nobody is erroneously charged, arrested, or incarcerated. When the system fails, even temporarily, and a prosecutor has knowledge of that failure, as did Leal, the prosecutor is expected to do what he can to correct the error.

Qualifying prosecutorial immunity here would undercut the broader public interest by potentially constraining "the vigorous and fearless performance of the prosecutor's duty" upon which the system relies. *See Imbler*, 424 U.S. at 427–28, 96 S. Ct. at 993–94. Just as a prosecutor is absolutely immune for his actions relating to the initiation and pursuit of a criminal prosecution, *id.* at 431, 96 S. Ct. at 995, so too must he be absolutely immune when his actions are directed at clearing the name of an innocent person.

9

We certainly sympathize with Appellant. Even though Leal's actions were directed at the admirable objective of clearing Rivera #2's name, they were also the proximate—if unwitting—cause of Appellant's arrest and incarceration. As Judge Learned Hand observed, however, it is our task to balance the evils. *See Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949), *quoted in Imbler*, 424 U.S. at 428, 96 S. Ct. at 994. This we have done. If the impact of our holding is that prosecutors seeking the release of an innocent person are permitted to "investigate" slightly more than they otherwise can and still be absolutely immune, so be it. The alternative—creating an environment where a prosecutor in Leal's situation might fear exposure to vexatious litigation—would be far worse. *See Imbler*, 424 U.S. at 428, 96 S. Ct. at 994 (quoting *Gregoire*, 177 F.2d at 581) ("'[B]etter to leave unredressed the wrongs done . . . than to subject those who try to do their duty to the constant dread of retaliation.'").

In sum, we hold that Leal was functioning as an advocate for the State—and not as an investigator—when he obtained and compared driver's license records. As such, absolute immunity shields those actions from suit.

B.    *Whether Leal Functioned as a Complaining Witness*

Generally, prosecutorial actions that occur in court are shielded by absolute immunity, *see Burns*, 500 U.S. at 491–92, 111 S. Ct. at 1942; *Imbler*, 424 U.S. at 430–31, 96 S. Ct. at 995, even where the prosecutor knowingly proffers perjured testimony or fabricated exhibits, *Rowe*, 279 F.3d at 1279–80. An exception, however, is when a prosecutor personally swears to the truth of information he shares with the court. *Kalina*, 522 U.S. at 129–30, 118 S. Ct. at 509. In such cases, the prosecutor functions as a complaining witness and is no longer protected by absolute immunity. *See id.* at 131, 118 S. Ct. at 510.

Appellant argues that, because Leal made statements about him to the court, Leal functioned as a complaining witness, and not as a prosecutor. Moreover, because Leal's statements to the court provided the sole basis for the issuance of the capias that led to Appellant's arrest, Appellant contends it is irrelevant that Leal's "testimony" was unsworn.

We disagree. The sworn/unsworn distinction is more than critical; it is determinative. In *Kalina*, a prosecutor filed three documents with the court: (1) an information charging the defendant in that case with burglary; (2) a motion for an arrest warrant; and (3) a *sworn* certification of probable cause, which contained two inaccurate factual statements. 522 U.S. at 121, 118 S. Ct. at 505.

11

The Supreme Court held that the prosecutor acted as an advocate except for his swearing to the truth of the certification. *Id.* at 129, 118 S. Ct. at 509. In that regard alone, the Court held that the prosecutor functioned as a complaining witness, which meant that he was not protected by absolute immunity so far as the contents of the certification were concerned. *See id.* at 130, 118 S. Ct. at 510 ("Testifying about facts is the function of the witness, not of the lawyer.).

In this case, Leal never personally swore to the truth of any information he shared with the court. There is also no indication that Leal sought the issuance of a capias. Accordingly, we conclude that he did not function as a complaining witness. Granted, some of his information was inaccurate and he was careless to share it without checking further, but that does not change the fact that absolute immunity shields his actions as an advocate.

## IV. CONCLUSION

For the reasons stated, we hold Leal did not abandon the role of advocate to function as either an investigator or a complaining witness. Accordingly, his actions are shielded by absolute immunity, and the district court's dismissal of Appellant's claims is

AFFIRMED.

12